# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CIVIL ACTION NO. 5:18-CV-156-TBR

GARY MORRIS                                                                                                                                                         PLAINTIFF

v.

MURRAY STATE UNIVERSITY; AND                                          DEFENDANTS
TRACEY WORTHAM

## MEMORANDUM OPINION

This matter is before the Court upon motion by Defendants, Murray State University ("MSU") and Tracey Wortham, to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DN 7). Plaintiff, Gary Morris, has filed his response. (DN 9). This matter is ripe for review and for the following reasons, Defendants' motion to dismiss is **GRANTED.**

## Background

The factual allegations as set out in the Complaint (DN 1), and taken as true, are as follows.[1] Defendant MSU hired Plaintiff as an Assistant Professor in August of 2011. (DN 1 at 3). In the following years, Plaintiff received a grant, published research in scholarly journals, received the Emerging Scholar award from MSU, developed two Study Abroad Programs for the Occupational Safety and Health Department, and was promoted to Associate Professor with tenure. *Id.* MSU promoted Plaintiff to Chair of the Safety Department. *Id.* at 4. In July of 2015, Plaintiff went to work for the Board of Certified Safety Professionals (The "Board"). *Id.* Apparently, Plaintiff relinquished his position as Department Chair when he went to work for the Board. Defendant

---

[1] *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) ("All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party.").

1

Tracey Wortham replaced Plaintiff as Department Chair. *Id.* In August 2015, Plaintiff had a disagreement at a board meeting with the CEO of the Board. Because of this disagreement, Plaintiff met with Murray Dean of the College of Science, Engineering and Technology Steve Cobb and requested they pull his resignation letter and allow him to remain employed with MSU. *Id.* Although Plaintiff was allowed to continue working as an Associate Professor with tenure at MSU, Wortham remained Department Chair. *Id.*

The issues between Plaintiff and Defendants began in October 2015, when three complaints were filed against Plaintiff with MSU's Individual Diversity, Equity and Access ("IDEA") office. *Id.* at 4-5. Because of the complaints, IDEA asked Plaintiff not to attend the upcoming Future Safety Leader Conference in Chicago with his students. *Id.* at 5. Students who had been contacted in the course of the IDEA investigation called and complained to Plaintiff that they were being asked leading questions regarding alleged financial and behavioral problems of Plaintiff. *Id.* Then, in December 2015, IDEA informed Plaintiff that he was being removed from the Study Abroad Program. *Id.* at 6. Another Professor, Dr. Keller, replaced him in the Program. *Id.* The investigation continued in the following months and more students communicated to Plaintiff that they were being asked leading questions about Plaintiff's behavior and financial decisions. *Id.* at 6-7. Dr. Keller informed one student that Plaintiff was being fired for financial misconduct, that the Department did not like Plaintiff, and that the Department wanted to rehire "Dr. Wells." *Id.* at 7.

In February of 2016, Plaintiff was excluded from faculty birthday celebrations and his research that was displayed in the college was taken down. *Id.* Plaintiff was also excluded from meetings and department functions. *Id.* In May 2016, Defendant Wortham began sending emails to Plaintiff and Dean Cobb about student complaints and missing accreditation documents. *Id.* When Plaintiff met with Dean Cobb to discuss the emails, Plaintiff learned that he had been

2

accused by an unnamed faculty member of being a "sexual predator" and having a "drinking problem." *Id.* at 8. About five months later, Dean Cobb informed Plaintiff that Wortham had told the IDEA president that Plaintiff was "still acting up." *Id.* Dean Cobb arranged a meeting between Plaintiff and Wortham to attempt to resolve the differences between them. *Id.*

In November 2016, Dean Cobb instructed Plaintiff again not to attend the Future Safety Leader Conference ("FSLC") in Chicago with his students. *Id.* at 8-9. Later that month, a student informed Plaintiff that the student had asked Wortham if Plaintiff was still the Department Chair and Wortham had responded, "no, we have decided to do things more professionally now." *Id.* at 9.

About a year later, in September 2017, Plaintiff invited a student to take an exam at Plaintiff's home. *Id.* Wortham learned of this offer and then began "stirring the pot" with Defendant MSU. *Id.* at 10. Sometime later, Dean Cobb and MSU's provost instructed Plaintiff to quit inviting students to his home for exams. *Id.* Plaintiff alleges that it is not against policy to invite students to the home of a professor to take an exam. *Id.*

Over the next five months, Plaintiff was excluded from receiving academic desk calendars, avoided by other faculty members, and avoided by former graduate assistants. *Id.* at 10-12. Furthermore, Plaintiff alleges that Wortham asked other faculty members if they could go on the trip to Chicago because Plaintiff "needed a chaperone," denied Plaintiff funding for a presentation at a national convention, and prevented him from giving the presentation. *Id.* at 11-12. Finally, Plaintiff alleges that he has not been given annual evaluations since 2015 and has not been promoted to Full Professor. *Id.* at 11. Throughout the course of these events, Plaintiff repeatedly complained to University officials. Plaintiff claims that no action was taken in response to his complaints.

In April 2018, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Complaint against MSU. On or about July 24, 2018, the EEOC issued Plaintiff a "Right to Sue Letter." In the complaint he has filed with this Court, Plaintiff claims that MSU and Wortham are liable to him for denial of due process, age discrimination, racial discrimination, sex discrimination, hostile work environment, retaliation, breach of contract, tortious interference, defamation, and punitive damages. *Id.* at 12-17.

**Legal Standard**

In a motion to dismiss pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough factual matter to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79).

4

**Discussion**

Plaintiff brings ten counts alleging violations of federal and state law against Murray State University and Director Tracey Wortham. Although the parties do not discuss whether these claims are brought against Wortham in her official or individual capacity, the Court will address all ten counts in both capacities.

(A) <u>Claims against Murray State University and Wortham in her official capacity.</u>

Defendants argue that each of Plaintiff's claims are barred by the Eleventh Amendment and therefore must be dismissed. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against on of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment prohibits suits against states and their agencies brought in federal court by the state's own citizens, citizens of other states, by a foreign state or its citizens, or by federal corporations unless "(1) the state consents to suit; (2) the *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908), exception applies; or (3) Congress has abrogated a state's Eleventh Amendment immunity." *Ali v. Univ. of Louisville*, No. 3:17-CV-00638-RGJ, 2019 U.S. Dist. LEXIS 21734, *6, 2019 WL 539098 (W.D. Ky. Feb. 11, 2019) (citing *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000)). "Public universities in Kentucky and their directors are state agencies and officials for Eleventh Amendment purposes." *Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 613 (W.D. Ky. 2011). "[Murray State University] is a public university and is immune from suit under the Eleventh Amendment." *Bleid Sports, LLC v. Nat'l Collegiate*

*Athletic Ass'n*, 976 F. Supp. 2d 911, 914 (E.D. Ky. 2013). Therefore, unless one of the three exceptions listed above apply, Plaintiff may not sue Defendants in federal court.

Because Kentucky has not consented to waive its Eleventh Amendment immunity, the first exception does not apply in this case. *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991)). "[U]nder the *Ex parte Young* exception, 'a federal court may, without violating the Eleventh Amendment, issue a prospective injunction against a state officer to end a continuing violation of federal law.'" *Doe v. Dewine*, 910 F.3d 842, 848 (6th Cir. 2018) (citing *Price v. Medicaid Dir.*, 838 F.3d 739, 746-47 (6th Cir. 2012)). Because Plaintiff demands "any and all equitable relief" in his complaint, the court will consider whether the *Ex parte Young* exception applies to each of Plaintiff's claims. Finally, Congress has abrogated the state's Eleventh Amendment immunity regarding some of Plaintiff's claims.

*(i)      Civil Rights Act of 1964.*

Plaintiff brings counts II, III, IV, V, and VI pursuant to the Civil Rights Act of 1964. (DN 1). The Court assumes Plaintiff brings the claims under Title VII of the Act because they arise out of alleged employment discrimination. "In the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of race, color, religion, sex, or national origin." *Fitzpatrick v. Bitzer*, 427 U.S. 448, 447-448, 49 L.Ed.2d 614, 96 S.Ct. 2666 (1976) (internal quotations omitted). Thus, Plaintiff's claims for discrimination based on race

(Count III), sex (Count IV), hostile work environment (Count V), and retaliation (Count VI) are not prohibited by the Eleventh Amendment.

Defendants argue that Plaintiff has failed to exhaust his administrative remedies on each of his claims except for age discrimination. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 57, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)). The purpose of the exhaustion requirement is to both provide the employer with information concerning the conduct of which the employee complains and to afford the EEOC and the employer an opportunity to resolve the dispute through conference, conciliation, and persuasion. *Id.* Therefore, it is improper to allow a Title VII action to proceed if it encompasses claims that are outside of the scope of the charge filed with the EEOC because doing so deprives the EEOC and employer the opportunity to investigate and resolve the dispute. *Id.* On the other hand, "*pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Thus, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

In *Younis*, the Sixth Circuit Court of Appeals held that an Arab-American and Muslim pilot failed to exhaust administrative remedies for his hostile work environment and retaliation claims where the pilot's EEOC complaint alleged discrimination based on religion and national origin. 610 F.3d 359. The pilot's EEOC filing did not allege a claim of hostile work environment but instead "cited only discrete acts of alleged discrimination, limited to three or four isolated

7

comments by his peers that occurred over a three-year period." *Id.* at 362. The court held that "such evidence, cited in an EEOC charge to support a claim of disparate treatment, will not also support a subsequent, uncharged claim of hostile work environment unless the allegations in the complaint can be reasonably inferred from the acts alleged in the charge." *Id.* (quotation and citation omitted). The *Younis* court found that the "allegations in Younis's complaint exceed the scope of his EEOC charge" *Id.* Similarly, the court held that the pilot's retaliation claim was unexhausted because "[a]lthough Younis marked other boxes on the form evincing an intent to charge discrimination based on religion and national origin, he did not indicate that he was alleging retaliation" and "there is nothing in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation, nor is there any language that would have put the EEOC or the employer on notice that Younis was alleging retaliation by [his employer]." *Id.* at 363.

In *Davis*, the Sixth Circuit Court of Appeals held that a plaintiff who had filed a complaint with the EEOC alleging race discrimination and retaliation failed to exhaust her administrative remedies regarding her ADEA claim because she failed to include age discrimination in her initial EEOC complaint. 157 F.3d 460. The *Davis* court explained two scenarios where a plaintiff may proceed with a claim that he did not raise in his EEOC complaint: (1) if the EEOC *in fact* "reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred" and (2) "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* at 463. Davis checked the boxes on her EEOC form indicating "race" and "other" but not the box for "age." And in her description of the alleged discrimination, Davis only referred to race and retaliation. In reaching its decision, the court explained "[i]t would not be reasonable, for example, to expect an EEOC investigation of sex discrimination to grow out

8

of another charge simply because the plaintiff writes a feminine name in the space provided." *Id.* at 464. Therefore, the *Davis* court held that the plaintiff had not exhausted her administrative remedies.

In this case, Plaintiff Morris's EEOC complaint does not contain facts that would prompt the EEOC to investigate Plaintiff's discrimination claims based on race, sex, hostile work environment, or retaliation. Nor does Plaintiff argue that the EEOC investigation in fact revealed evidence of any of these claims. On his EEOC complaint, Plaintiff marks an "X" in the box provided to indicate discrimination based on age. Unlike *Davis*, Plaintiff did not even check the box to indicate "other." Plaintiff described the discrimination as follows:

> In or around August 2011, I was hired as an Assistant Professor by Murray State University. In or around February 2018 I spoke with Steve Cobb the Dean for the College of Science, Engineering Technology, and told him I had not been evaluated for the past 3 years by my Supervisor, Tracey Wortham. Since my complaint made in or around February 2018, I have not heard anything back from the company. No reason has been given to me for not being promoted. I believe I have been discriminated against because my age, 50, in violation of the Age Discrimination in Employment Act of 1967, as amended.

(DN 7-2). Like in *Younis*, there is "nothing in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation, nor is there any language that would have put the EEOC or the employer on notice that [the plaintiff] was alleging retaliation." 610 F.3d at 363. The same is true for Plaintiff's sex discrimination, age discrimination, and hostile work environment claims.

Plaintiff cites *Randolph v. Ohio Dep't of Youth Servs.* to argue that the Court should construe his EEOC complaint liberally and hold that all his discrimination claims are within the scope of the EEOC charge. 453 F.3d 724, 732 (6th Cir. 2006). The Plaintiff in *Randolph* claimed that, during her employment as a food service worker in the Circleville Youth Center, she was

subjected to music with lyrics that were degrading to women, body language that was offensive to female workers, offensive language describing the bodies of female workers, physical threats, and multiple occasions of attempted sexual assault. Randolph filed a charge of discrimination with the EEOC alleging discrimination that began on May 1, 1996. After being issued a Right to Sue Letter, Randolph filed a civil action alleging, *inter alia*, hostile work environment occurring prior to May 1, 1996. The district court held that "Randolph's charges for a sexually hostile work environment prior to May 1, 1996 are barred for failure to exhaust administrative remedies" because the earliest date of discrimination stated on the EEOC complaint was May 1, 1996. *Id.* at 731. The Sixth Circuit Court of Appeals reversed the district court's decision because "the actions prior to May 1, 1996, are not beyond the scope of the EEOC complaint, as the EEOC could reasonably be expected to investigate those actions notwithstanding the date listed on the face of Randolph's complaint." *Id.* at 732. (citation omitted). The court explained that the district court's decision "was improper because Randolph is not making a separate claim for actions prior to that date. . . . The district court's holding bifurcated Randolph's hostile-work-environment claim and held one of the claims exhausted. Hostile work environment claims by their very nature require ongoing conduct, however." *Id.* (citation omitted).

Unlike the plaintiff in *Randolph*, however, Dr. Morris is attempting to bring entirely separate discrimination claims that were not included in his EEOC complaint and he did not provide the EEOC with any facts from which the EEOC could be prompted to investigate additional claims. There are no facts or allegations in Plaintiff's EEOC complaint that would prompt the EEOC to investigate any of his discrimination claims other than age discrimination. This includes his hostile work environment claim. Unlike Randolph, who was allegedly subjected to offensive language, threats, and attempted sexual assaults, Dr. Morris merely alleged that he

10

had not been evaluated by his supervisor for three years. For the foregoing reasons, all of Plaintiff's claims for sex discrimination, race discrimination, retaliation, and hostile work environment are dismissed for failure to exhaust administrative remedies.

      (ii)      *Age Discrimination in Employment Act ("ADEA").*

In Count II of his complaint, Plaintiff alleges that Defendants discriminated against him on the basis of his age in violation of the Civil Rights Act of 1964. (DN 1 at 13). However, Title VII of the Civil Rights Act of 1964 does not prohibit age discrimination. *Bargo v. Goodwill Indus. Of Ky., Inc.*, 969 F.Supp.2d 819, 822 n. 1 (E.D. Ky. 2013) (citing *Briggs v. Potter*, 463 F.3d 507, 514 n. 2 (6th Cir. 2006)). "The ADEA, 29 U.S.C. § 621 *et seq.*, is the federal statute that prohibits age discrimination. . . ." *Briggs*, 463 F.3d at 514 n. 2. Because Title VII does not prohibit age discrimination, Count II must be dismissed.

Even if the Court were to construe Count II as an age discrimination claim under the ADEA, it would still fail to state a claim upon which relief can be granted. In *Kimel v. Florida Bd. of Regents*, the Supreme Court of the United States held "that the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment. . . . The ADEA's purported abrogation of the State's sovereign immunity is accordingly invalid." 528 U.S. 62, 91, 145 L. Ed. 2d 522, 120 S. Ct. 631 (2000). Because Congress did not abrogate state sovereign immunity when it enacted the ADEA, the Eleventh Amendment prohibits Plaintiff from bringing an ADEA claim against Defendants in this Court.

Furthermore, even construing Count II as an ADEA claim seeking prospective injunctive relief against Defendant Wortham, the claim fails because Plaintiff's complaint does not state facts

11

that are sufficient to state a claim upon which relief can be granted. Under the ADEA, "employers are prohibited from discharging or otherwise discriminating against any employee with respect to compensation, terms, conditions, or privileges of employment because of that individual's age." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). A plaintiff may establish age discrimination through either direct or circumstantial evidence. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 576 (6th Cir. 2012) (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011)).

In this case, Plaintiff seeks to establish a claim for age discrimination with circumstantial evidence. (*See* DN 1). "A circumstantial-evidence case involves proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Back*, 694 F.3d at 576 (quoting *Allen*, 545 F.3d at 394) (internal quotation marks omitted). The *McDonnell Douglas* burden-shifting framework applies in age discrimination cases where the plaintiff seeks to establish her case through circumstantial evidence. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Under this framework, a plaintiff must first establish a *prima facie* case of age discrimination. Once the plaintiff does so, the burden shifts to the defendant, "[who] must articulate some legitimate, nondiscriminatory reason for the termination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant successfully articulates a legitimate, nondiscriminatory reason, then the burden shifts back to the plaintiff to demonstrate that the defendant's "proffered reason is a pretext." *Id.* (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). While the burden of production shifts under the *McDonnell Douglas* framework, "[t]he burden of persuasion . . . remains on the . . . plaintiff at all times to demonstrate that age was the "but-for" cause of their

employer's adverse action." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004) (citations omitted). The plaintiff's "burden at the *prima facie* stage is 'not onerous' and 'poses a burden easily met.'" *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

Plaintiff fails to state a claim upon which relief may be granted because he has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Specifically, Plaintiff does not plead facts to support an inference that he was treated differently from similarly situated employees outside of his protected class. Plaintiff alleges in his complaint, *inter alia*, that he was asked not to attend a Future Safety Leader Conference in Chicago with his students, he was replaced by another professor ("Dr. Keller") in the Study Abroad Program, he was excluded from the faculty birthday celebrations, his research that was displayed throughout the college was taken down, he was omitted from meetings and department functions, his complaints regarding Defendant Wortham were ignored by the administration, he was instructed not to invite students to take exams at his home, he was excluded from receiving academic desk calendars, he had not received annual evaluations since 2015, and that he was not promoted to Full Professor. However, Plaintiff does

not state a single fact to support his claim that employees who were not in his protected class were treated differently than him. In fact, he does not say how old anyone is in his complaint.

Even if the Court takes judicial notice of the EEOC complaint attached to Defendants' motion, Plaintiff has not plead sufficient facts. This Court may take judicial notice of the EEOC charge without converting the motion to dismiss into one for summary judgment. *Williams v. Allstate Ins. Co.*, No. 5:04-CV-2435, 2005 U.S. Dist. LEXIS 40799, 2005 WL 1126761, at *2 n.1 (N.D. Ohio Apr. 19, 2005) (holding that the court could take judicial notice of the EEOC complaint and right-to-sue letter attached to a motion to dismiss under Fed. R. Evid. 201). The EEOC complaint, like the complaint Plaintiff filed in this Court, does not identify a similarly situated employee who is not a member of his protected class that was treated differently than him. The EEOC complaint does not provide the age of anyone other than Plaintiff. It would be unreasonable for the Court to draw the inference that Defendants discriminated against Plaintiff *because of* his age without knowing the age of any other individual involved in the allegations and without any other facts to suggest that Defendants were motivated by Plaintiff's age. Because Plaintiff has failed to plead a *prima facie* case of age discrimination, Count II must be dismissed**.**

(iii) *Denial of Due Process.*

In Count I, Plaintiff brings a claim for "Denial of Due Process" in violation of the Fourth and Fourteenth Amendment. The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Court is unsure how the Fourth Amendment applies to the facts of this case. Instead, the Court assumes that Plaintiff intended to bring his claim under the Fifth and Fourteenth Amendments. The Fifth Amendment provides, in relevant part: "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." However, the Fifth Amendment does not apply to the states. *Sharp v. Kelsey*, 918 F. Supp. 1115,1121 (W.D. Mich. 1996). Rather, it is the Fourteenth Amendment Due Process Clause which is applicable to state actors. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Therefore, Plaintiff's Fifth Amendment Due Process claim must be dismissed**.**

The next issue is whether Plaintiff has brought a cognizable cause of action under the Fourteenth Amendment. Section One of the Fourteenth Amendment provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." A litigant does not have a cause of action arising directly under the Constitution when Congress has provided a statutory remedy under which the Plaintiff could vindicate his rights. *Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 903 (N.D. Ohio 1998) (citing *Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987), *vacated and remanded on other grounds*, 488 U.S. 1036, 102 L. Ed. 2d 984, 109 S. Ct. 859 (1989)).

Plaintiff should have brought Count I pursuant to 42 U.S.C. § 1983. Section 1983 authorizes a civil action for deprivation of federal rights against a person acting under color of state law. Because Congress provided § 1983 as a statutory remedy for the alleged harm in this case, Plaintiff does not have a cognizable cause of action arising directly from Section One of the Fourteenth Amendment. And Even if Plaintiff had brought his claim pursuant to § 1983, Congress did not abrogate Eleventh Amendment Sovereign Immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 59 L. Ed. 2d 358, 99 S.Ct. 1139 (1979). Thus, Plaintiff would be unable to

recover monetary damages from the Defendants. Furthermore, even assuming that Plaintiff could bring this cause of action directly under Section One of the Fourteenth Amendment, MSU and Wortham would be immune from a suit for damages. *Stein*, 994 F. Supp. At 904 (citing *Bailey v. Ohio State University*, 487 F. Supp. 601, 606 (S.D. Ohio 1980) (Congress did not grant federal question jurisdiction to the courts pursuant to the Fourteenth Amendment, and a federal court lacks similar power to abrogate Eleventh Amendment immunity by recognizing a damage remedy for a constitutional wrong)). Because there is not a cognizable cause of action under Section One of the Fourteenth Amendment in this case and because Plaintiff has not brought a § 1983 claim, Count I must be dismissed.

*(iv)* *State Law Claims.*

Plaintiff's state law claims are barred by the Eleventh Amendment. In *Experimental Holdings, Inc. v. Farris*, the Sixth Circuit Court of Appeals explained:

> The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment. . . . The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.

503 F.3d 514, 520-21 (6th Cir. 2007) (citing *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 117-21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Congress has not abrogated the Eleventh Amendment for state law claims. . . ." *McCormick v. Miami University*, 693 F.3d 654, 664 (6th Cir. 2012) (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002)). And Kentucky has not waived its sovereign immunity. *Adams*, 90 F. App'x at 857 (citing *Whittington*, 928 F.2d at 193).

The Eleventh Amendment bar for violations of state law extends beyond actions for monetary relief and bars a plaintiff from seeking injunctive relief under the *Ex parte Young* doctrine also. The entire basis for the *Ex parte Young* exception evaporates "when a plaintiff alleges that a state official has violated *state* law," because "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Because Kentucky's "constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature," Plaintiff's claims for breach of contract, tortious interference, defamation, and Plaintiff's claims for violation of the Kentucky constitution are barred by the Eleventh Amendment. *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005); *See also Machisa Design Servs. v. Bd. of Educ.*, No. 2:12-CV-838, 2013 U.S. Dist. LEXIS 2294, *7-8, 2013 WL 80273 (S.D. Ohio Jan. 7, 2013) (explaining that state law claims of breach of contract, defamation, and interference with contract are barred by the Eleventh Amendment). For these reasons, Counts VII, VIII, IX, and—to the extent they arise under Kentucky's Constitution—I, II, III, IV, V, and VI must be dismissed**.** Furthermore, because Plaintiff's claim for punitive damages (Count X) seeks to "impose a liability which must be paid from public funds in the state treasury," must also dismissed**.** *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *See also Cope v. Jefferson County Probation/Parole Office*, No. 3:15-CV-P255-TBR, 2015 U.S. Dist. LEXIS 93687, *4, 2015 WL 4450834 (W.D. Ky. July 19, 2015) ("The Court lacks subject-matter jurisdiction over Plaintiff's claims for monetary and punitive damages against the Office of Probation/Parole, a state agency, by operation of the Eleventh Amendment to the U.S. Constitution.").

(B) <u>Claims against Wortham in her individual capacity.</u>

The Court's analysis for Plaintiff's federal claims against Wortham in her individual capacity mirrors its analysis of the official capacity claims. Plaintiff's claim for denial of due process in violation of the Fifth and Fourteenth Amendments fail because the Fifth Amendment does not apply to the states and because Plaintiff neglected to bring his Fourteenth Amendment claim under § 1983. Plaintiff's Title VII claims fail because he did not exhaust his administrative remedies. And Plaintiff's ADEA claim must be dismissed because he has failed to allege facts sufficient to state a claim upon which relief can be granted. Thus, only Plaintiff's state law claims remain.

The only remaining issue is whether the Court should continue to exercise supplemental jurisdiction over Plaintiff's state law claims when no federal law claims remain. Although federal district courts have discretion to exercise pendent jurisdiction over state claims filed in connection with and arising out of the same facts as federal claims, if the federal claims are dismissed, then the pendent state claims should generally be dismissed as well. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). "When . . . a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Coleman v. Wirtz,* 745 F. Supp. 434, 439 (N.D. Oh. 1990) (citing *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 349-350, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)).

"In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (quoting

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)). "A district court may also 'consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account' in determining whether the balance of factors supports a remand of the state-law claims." *Id*. at 952 (quoting *Carnegie-Mellon*, 484 U.S. at 357). When all federal claims are dismissed before trial and only state law claims remain, "the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id*. (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

In this case, there are no remaining federal claims. The federal claims are being dismissed at an early stage of the proceedings. Defendants have not yet filed their answer. The parties in this action have not completed discover, no summary judgment motions have been filed with the Court, and judicial economy would not be served by exercising supplemental jurisdiction over Plaintiff's state law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952-53 (6th Cir. 2010) (declining to exercise supplemental jurisdiction under comparable circumstances). Furthermore, the remaining state law claims are not closely tied to any federal policy or interest that would support his Court's deviating from the general rule of declining to exercise supplemental jurisdiction absent federal claims. For these reasons, the Court declines to exercise supplemental jurisdiction over the state law claims in this action.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss (DN 7) is **GRANTED.** The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

June 21, 2019

CC: Counsel of Record.